IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STATE FARM FIRE & CASUALTY      :          CIVIL ACTION
COMPANY                         :
                                :
        v.                      :
                                :
MARK STEFFEN, et ux.            :          NO. 09-4965

MEMORANDUM

Dalzell, J.                                          April 19, 2013

        Plaintiff State Farm Fire & Casualty Company ("State

Farm"), as subrogee, invoked our diversity jurisdiction[1] and filed

a one-count subrogation complaint against defendants Mark and

Patricia Steffen alleging that their negligence caused a July 3,

2009 fire that damaged its insured's property.

        The Steffens filed a motion for summary judgment.  They

claim that State Farm's Pennsylvania common law negligence claim

must succumb to summary judgment because State Farm lacks any

admissible evidence as to the cause of the fire that destroyed its

insured's neighboring property, such that it cannot present a

prima facie negligence claim.  See Fed. R. Civ. P. 56(c)(2).

Embedded in the Steffens' summary judgment motion is a Daubert

motion that seeks to exclude Robert Kersey, Jr.'s expert opinion

evidence on the issue of fire causation because it does not comply

with Fed. R. Evid. 702.

        State Farm filed its response in opposition to the

summary judgment motion, contending that its negligence claim

_____

        [1]  Our March 14, 2013 Order (docket entry # 33) addresses the

should withstand summary judgment because Kersey's expert opinion

evidence is admissible under Rule 702.  Alternatively, State Farm

asserted that, at a minimum, it was entitled to a summary

judgment-defeating adverse inference on the fire's causation

because non-party Nationwide Mutual Insurance Company

("Nationwide"), the Steffens' insurer and (so its argument goes)

its agent, spoliated the fire scene (the "vicarious spoliation"

theory).[2]

In reply, the Steffens reasserted their lack of

causation evidence argument and claim that the undisputed summary

judgment record demonstrated that Nationwide was not their agent

at the time Nationwide allegedly spoliated the fire scene, thus

foreclosing State Farm's vicarious spoliation theory.

Given the nature of the parties' summary judgment

briefing, we convened a Daubert hearing on April 10, 2013 to

address the admissibility of Kersey's expert opinion evidence.  We

also ordered supplemental briefing on the Daubert issue and on the

vicarious spoliation theory.  Upon consideration of the parties'

submissions and the hearing testimony, we conclude that additional

briefing is not necessary and thus this matter is ripe for

---

basis for our diversity jurisdiction.
    [2]  State Farm filed an addendum to its response without first
seeking our leave to do so.  We will not consider that
unauthorized submission.  See March 14, 2013 Order n.1; Loc. R.
Civ. P. 7.1(c) ("The Court may require or permit briefs or

decision.

For the reasons detailed below, we hold that Kersey's expert evidence is inadmissible under Fed. R. Evid. 702 and that State Farm has not pointed to any other admissible evidence from which a reasonable factfinder could determine the fire's cause.[3] Consequently, State Farm has failed to state a <u>prima facie</u> case for negligence and its single negligence claim must succumb to summary judgment. State Farm's inability to point to any evidence that could lead a reasonable factfinder to conclude that Nationwide was the Steffens' agent at the time the fire scene was allegedly spoliated also defeats its vicarious spoliation theory and, thus, does not resurrect its negligence claim.

I.   <u>Summary Judgment Standard</u>

"Summary judgment should only be granted if 'there is no genuine dispute as to any material fact." Fed.R.Civ.P. 56(a). A dispute is genuine if a reasonable trier-of-fact could find in favor of the non-movant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 252 . . . (1986). A dispute is material if it could affect the outcome of the case. <u>Id.</u> In considering the record, we must draw all reasonable inferences in favor of the non-moving party[.] [<u>Matsushita Elec. Indus. Co. Ltd. v. Zenith</u>

_____

submissions if the Court deems them necessary.").

[3] It bears noting that neither party demanded a jury and thus in any trial we would be the finder of fact.

Radio Corp., 475 U.S. 574, 587 (1986)).]" Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 300 (3d Cir. 2012).

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Supreme Court addressed the movant's burden of production on a motion for summary judgment where the movant contended that a non-movant plaintiff lacked sufficient evidence to establish an essential element of her case. Though Justice Brennan's dissent disagreed with the Celotex Majority's application of the summary judgment standard to the facts of that case, he stated that he "would have [nevertheless] written separately to explain more clearly the" summary judgment standard. Id. at 329 (Brennan, J., dissenting); see also id. at 334. His analysis is instructive.[4]

Justice Brennan explained that the movant bears the burden of establishing the "nonexistence of a 'genuine issue'", and "[t]his burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id. at 330 (Brennan, J., dissenting). Moreover, "[t]he burden of production imposed by Rule 56 requires the moving party to make a prima facie showing that it is entitled to summary judgment. . . . If the burden of

---

[4] See In re Bressman, 327 F.3d 229, 237 n.3 (3d Cir. 2003) (relying on Justice Brennan's dissenting Celotex opinion because it "does not differ with the opinion of the Court regarding the

persuasion at trial would be on the <u>non-moving</u> party, the party

moving for summary judgment may satisfy Rule 56's burden of

production . . . [by] demonstrat[ing] to the Court that the

nonmoving party's evidence is insufficient to establish an

essential element of the nonmoving party's claim." <u>Id.</u> at 331

(Brennan, J., dissenting) (emphasis added). And "[i]f the

nonmoving party cannot muster sufficient evidence to make out its

claim, a trial would be useless and the moving party is entitled

to summary judgment as a matter of law." <u>Id.</u> (Brennan, J.,

dissenting) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

249 (1986)).

In light of this framework, on a motion for summary

judgment "[a] party may object that the material cited to support

or dispute a fact cannot be presented in a form that would be

admissible in evidence." Fed. R. Civ. P. 56(c)(2). "[W]hen such

an objection [to the admissibility of summary judgment record

evidence] is made [under Rule 56(c)(2)], the burden is on the

proponent of the evidence to show that the material is admissible

as presented or to explain the admissible form that is

anticipated." <u>Gannon Intern., Ltd. V. Blocker</u>, 684 F.3d 785, 793

(8th Cir. 2012) (citing the Rule 56 Advisory Committee Note

(2010)); <u>id.</u> (noting that on summary judgment the standard for

_____

appropriate standards for summary judgment".)

admissibility is "whether it <u>could</u> be presented at trial in an admissible form") (emphasis in original); <u>see also</u> <u>Heffernan v. City of Patterson</u>, 492 F. App'x 225, 228 (3d Cir. 2012) (citing Fed. R. Civ. P. 56(c)(2) because it "permit[s] challenges to supporting evidence"), <u>Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.</u>, 671 F.3d 512, 515 (5th Cir. 2012) (discussing the new Rule 56(c)(2) mechanism); <u>accord</u> 1 Steven S. Gensler, <u>Federal Rules of Civil Procedure, Rules and Commentary</u> Rule 56 nn. 104-106 & accompanying text (current through March 2013) (citing the Advisory Committee's Note (2010)).

## II.  Factual Background

Drawing all reasonable inferences in non-movant State Farm's favor, we first consider undisputed background facts.

On July 3, 2009, a fire engulfed Mark and Patricia Steffen's house in Marcus Hook, Pennsylvania.  This fire spread to and damaged several neighboring properties.  Nationwide, the Steffens' insurer at the time of the fire, began a first-party insurance claim investigation at the Steffens' badly burned residence.  <u>See, e.g.</u>, MSJ Resp. Ex. D 7:8-13.

One of the neighboring fire-damaged properties was owned by William Brazell, State Farm's insured.  State Farm paid Brazell for his fire-related claim and became subrogated to certain of his rights and interests arising from the fire.  On October 29, 2009,

State Farm, as subrogee, filed this one-count negligence complaint.

On February 17, 2010, Nationwide, the Steffens' insurer, initiated an interpleader action that was assigned to our docket as related to State Farm's negligence suit.  See Nationwide Mutual Ins. Co. v. State Farm Fire & Casualty Co., et al, E.D. Pa. Civil Action No. 10-671.  Nationwide named State Farm as one of the interpleader defendants.  State Farm did not file any counterclaims against Nationwide in that suit.

On January 4, 2011 we dismissed Nationwide from the related interpleader action and on August 2, 2011 we approved the interpleader defendants' stipulation of dismissal with prejudice and ratified the parties' agreed-upon distribution of the $100,000 interpleaded funds that Nationwide had deposited into the Registry of the Court.  State Farm agreed to take $37,410 from that interpleader fund, though it expressly reserved its right to continue to pursue its negligence claim against the Steffens in this action.

III.  The Steffens' Summary Judgment Motion

At bottom, the Steffens' summary judgment motion, reply, and supplemental brief argue that: (1) there is no causation evidence in the record that we may properly consider, and (2) State Farm's vicarious spoliation theory must fail.  We consider

7

these contentions in turn.

### A.    Lack of Causation Evidence
### Warrants Grant of Summary Judgment

Causation is an essential element of a prima facie negligent fire claim under Pennsylvania law.  See Propert v. Flanagan, 120 A. 783, 783 (1923) ("'[t]he law does not require proof by direct evidence that a fire was caused in a particular way, but it is necessary to establish, not only that it could possibly come from the cause assigned, but that [it] was the probable and natural cause); see also Marrazzo v. Scranton Nehi Bottling Co., 223 A.2d 17, 23 (Pa. 1966) (citing Propert); Lanza v. Poretti, 537 F. Supp. 777, 783 (E.D. Pa. 1982) (arising under Pennsylvania law and "recogniz[ing] that a plaintiff in a fire case where careless smoking is alleged to be the cause can rarely do more than present expert testimony as to the fire's cause, and support such testimony by some evidence of smoking on the premises shortly before the fire began.  This will usually make out a case of negligence sufficient to put the defendant to proof.").  Thus, to survive the Steffens' motion for summary judgment on the basis that there is insufficient causation evidence, non-movant State Farm must point to some admissible evidence on this subject.

But State Farm fails to point to any evidence of the fire's cause here and its negligence claim must as a result

succumb to summary judgment.  State Farm's response to the motion

for summary judgment contends that two items of evidence exist

that establish causation: a handwritten statement authored by

electrical engineer Randall Marshall, and Kersey's expert fire

causation opinion.[5]  Neither evidentiary item is admissible for the

purpose of establishing causation.[6]

Our March 14, 2013 Order noted that to the extent State

Farm intended to introduce into evidence Randall Marshall's

statement for its truth as fire causation expert opinion evidence,

see, e.g., MSJ Resp. Ex. B, plaintiff as the proponent would have

to address its admissibility at a Daubert hearing.  State Farm did

---

[5]  State Farm contends that "[Richard] O'Brien [Nationwide's
origin and cause specialist] . . . says there was a fire within
the can . . . [h]e says he just can not rule out something
dropping into the can during the fire."  MSJ Resp. 11 (citing MSJ
Resp. Ex. G 17:8).  Even assuming that this hearsay is admissible,
a reasonable factfinder could not infer anything from it about the
cause of the fire that engulfed the can.

[6]  As we will discuss below, the parties agree that the
National Fire Protection Association ("NFPA") 921 Guide for Fire
and Explosion Investigations (2011 ed.), if properly applied,
provides a reliable fire causation determination methodology.
Notably, NFPA 921 § 18.1 ("Fire Cause Determination") provides
that "[f]ire cause determination is the process of identifying the
first fuel ignited, the ignition source, the oxidizing agent, and
the circumstances that resulted in the fire.  Fire cause
determination generally follows origin determination."
Consequently, a fire origin and causation expert will typically
opine on two separate issues: the fire's point of origin and its
cause.  The Steffens' motion for summary judgment, reply, and
supplemental briefing -- MSJ Mem. 3-4, 8-11; MSJ Reply 1; Steffens
Supp. Br. 1 -- take issue with the admissibility of Kersey's
causation opinion only.  We therefore need not address the
admissibility of Kersey's point of origin opinion.

not offer Marshall as an expert at the hearing and so we will not consider his statement as expert fire causation opinion evidence in light of State Farm's decision.

At the April 10, 2013 hearing, we did not conclusively decide to what extent, if any, Marshall's statement was admissible. We now conclude that Marshall's statement is admissible for the limited purpose for which State Farm concededly offered it: "as [evidence of] one of the foundations for [Kersey's expert] opinion" only. April 10, 2013 Tr. 28:18-20; see also NFPA 921 § 4.3.2 (stating that a fire cause investigation is conducted "by an examination of the scene and by a combination of other data collection methods, such as the review of previously conducted investigations of the incident, the interviewing of witnesses or other knowledgeable persons, and the results of scientific testing."[7]). Thus, for purposes of this summary judgment motion, we will consider Marshall's non-expert statement not for its truth but as evidence of "one of the things that [Kersey] relied upon in his opinion." April 10, 2013 Tr. 28:19-20. Since Marshall's statement is not offered as substantive evidence of the fire's cause, we will not consider it as such.

Kersey, in contrast, testified at the hearing. As to

_____

[7] Our excerpts from NFPA 921 are taken from Exhibit C to State Farm's response in opposition to the motion for summary judgment, which contains excerpts from this source. MSJ Resp. Ex. C.

the admissibility of his expert opinion evidence on the issue of fire causation, State Farm bears the burden of establishing its admissibility by a preponderance of the evidence.  See Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 417-18 (3d Cir. 1999).[8]  Kersey's expert opinion claims that "[t]he methodology and opinions expressed in this origin & cause report rely primarily upon the 2011 Edition of NFPA 921 -- Guide for Fire and Explosion Investigations and are based upon the Scientific Method as its primary standard of care."  MSJ Ex. B at 6 of 6.  By contrast, the Steffens' motion for summary judgment contends that Kersey's fire causation opinion is actually based on "speculati[on] and [is] unsupported by the evidence", MSJ Mem. 2, and fails to abide by the NFPA 921 protocol and scientific method such that his purported application of that methodology to facts here is not reliable.

    We conclude that State Farm has not carried its burden of showing that Kersey's expert opinion evidence could be presented at trial in an admissible form under Fed. R. Evid. 702. State Farm has not established by a preponderance of the evidence that his opinion is "based on sufficient facts or data", Fed. R. Evid. 702(b), nor is it a "reliabl[e] appli[cation of] the

---

[8]  The Steffens' summary judgment motion invokes Fed. R. Civ. P. 56(c)(2) in that they preemptively claim that Kersey's opinion evidence is inadmissible.

principles and methods to the facts of the case", Fed. R. Evid.
702(d).

Fed. R. Evid. 702[9] and <u>Daubert</u> and its progeny apply to
expert testimony premised on technical and specialized knowledge
like Kersey's fire causation expert opinion evidence here.  <u>See</u>
<u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 147-50 (1999).
Though our inquiry's "focus, of course, must be solely on
principles and methodology, not on the conclusions that they

---

[9]  Fed. R. Evid. 702, as recently amended, provides that:

> A witness who is qualified as an expert by
> knowledge, skill, experience, training,
> or education may testify in the form of an opinion
> or otherwise if:
> (a) the expert's scientific, technical, or
> other specialized knowledge will help the trier
> of fact to understand the evidence or to
> determine a fact in issue;
> (b) the testimony is based on sufficient facts
> or data;
> (c) the testimony is the product of reliable
> principles and methods; <u>and</u>
> (d) the expert has reliably applied the
> principles and methods to the facts of the
> case.  (emphasis added)

The plain language of Rule 702 treats sections (a) through
(d) of this Rule as separate, independent requirements.  Our Court
of Appeals continues to apply its cases interpreting the pre-2011
version of Rule 702 in applicable situations governed under the
Rule's new language.  <u>See, e.g.,</u> <u>ZF Meritor, LLC v. Eaton Corp.</u>,
696 F.3d 254, 289-90 (3d Cir. 2012);  <u>Furlan v. Schindler Elevator</u>
<u>Corp.</u>, No. 12-2232, 2013 WL 1122649, at *2-*3 (3d Cir. Mar. 19,
2013) (table opinion); <u>see also</u> Fed. R. Evid. 702 Advisory
Committee Notes 2011 Amendments ("The language of Rule 702 has
been amended as part of the restyling of the Evidence Rules . . .
. [and] are intended to be stylistic only.  There is no intent to

generate, a district court must examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used." Heller v. Shaw Industries, Inc., 167 F.3d 146, 153 (3d Cir. 1999) (internal quotation marks, citations, and alterations omitted).

For expert technical testimony to be deemed reliably applied, our Court of Appeals, in recognizing that "the test of reliability is 'flexible'", Kumho Tire Co., Ltd., 526 U.S. at 141, has identified a non-exhaustive list of factors we should consider in a reliability analysis:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put[,]

Mitchell, 365 F.3d at 235 (emphasis added) (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742 n. 8 (3d Cir. 1994)); expert opinion evidence "must be based on . . . 'methods and procedures . . .' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his [or] her

_____

change any result in any ruling on evidence admissibility.").

belief." Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003)

(internal quotation marks and citations omitted) (emphasis added).

Further, "[a] court may conclude that there is simply too great an

analytical gap between the data and the opinion proffered."

General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).

The parties agree that if an expert properly applies the

NFPA 921 guidelines, that application would constitute a reliable

method for determining fire causation.[10]  Accord Fireman's Fund

Ins. Co. v. Canon U.S.A., Inc., 394 F.3d 1054, 1057-58 (8th Cir.

2005); Community Ass'n Underwriters of Am., Inc. v. Rhodes

Development Grp., Inc., No. 09-257, 2013 WL 818596, at *11 (M.D.

Pa. March 5, 2013); Hoang v. Funai Corp., 652 F. Supp. 2d 564,

567, 570 (M.D. Pa. 2009)).

In his expert report and Daubert hearing testimony,

Kersey offers the following fire causation opinion:

> The causation of this fire loss was determined
> to be an open flame igniting combustible
> materials within the plastic trashcan.  Thus
> carelessly discarded smoking materials inside
> the trashcan could not be eliminated.

---

[10] Fed. R. Evid. 702(c) is not in dispute.  At the hearing,
the Steffens also conceded that Kersey was "qualified" as a fire
origin and cause expert, April 10, 2013 Tr. 7:24-8:6, thus there
is similarly no dispute that the preamble to Rule 702 is satisfied
here.  We need not reach whether the "fit" requirement in Rule
702(a) is in play here because we conclude that Kersey's opinion
evidence is inadmissible on other grounds.

MSJ Ex. B at 5 of 6; see also April 10, 2013 Tr. 48:6-9. Kersey

testified that the ignition sequence here was "[o]pen flame

dropped into the trash can, ignited combustible materials, and

then burning up and consuming the trash can and burning into the

porch." Id. at 63:25-64:2.

Our review of Kersey's expert report and Daubert hearing

testimony leaves us with no doubt that his "discarded smoking

material" opinion is not "based on sufficient facts or data", Fed.

R. Evid. 702(b).[11]  NFPA 921 § 18.1 explains that "[f]ire cause

determination is the process of identifying [1] the first fuel

ignited, [2] the ignition source, [3] the oxidizing agent, and [4]

the circumstances that resulted in the fire."

Kersey concedes that he cannot identify the first fuel

ignited here.  April 10, 2013 Tr. 88:10-11 ("Q. What was the first

fuel ignited in this case?  A. I don't know.").

Though Kersey opines that the "ignition source" is an

"open flame" or "some type of combustible in the trash can", to

---

[11] The NFPA 921 protocol mimics Fed. R. Evid. 702(b) given
that these two sources call for fact and data-based conclusions.
See NFPA 921 § 18.6.5 ("[a]ny hypothesis formulated for the causal
factors (e.g., first fuel, ignition source, and ignition
sequence), must be based on facts.  Those facts are derived from
evidence, observations, calculations, experiments, and the laws of
science.  Speculative information cannot be included in the
analysis"); id. § 4.3.5 ("hypotheses should be based solely on the
empirical data that the investigator has collected through
observation").  Thus, Kersey's failure to base his opinion on
facts also evidences his unreliable application of the NFPA 921

wit, smoking materials, the only support he musters for his
assertion that a discarded match or smoldering cigarette butt was
the ignition source is Mr. Steffen's status as a smoker, nothing
more.  Cf. NFPA 921 § 18.6.5.1 ("it is improper to opine a
specific ignition source that has no evidence to support it even
though all other hypothesized sources were eliminated").

Consequently, Kersey's proffered ignition sequence is
rooted in supposition: his opinion does not rest on any evidence
of an "open flame" ignition source, assumes Mark Steffen "dropped"
the assumed-to-exist open flame into the trash can, and further
assumes "combustible materials" -- of which there is no direct or
circumstantial evidence -- were ignited.  Thus, peeling away the
layers of assumption undergirding Kersey's causation conclusion
reveals that it is in fact nothing more than a hunch that fails to
satisfy Fed. R. Evid. 702(b)'s evidence and data-based standard.

Kersey's opinion evidence also fails to satisfy another
Rule 702 requirement.  Though Kersey claims to have followed the
NFPA 921 protocol, his method did not consider all available
evidence and alternate hypotheses.  Moreover, his testimony at the
Daubert hearing -- which demonstrated no willingness to
incorporate this overlooked evidence into his opinion[12] -- further

_____

protocol here.
        [12] This is so even though Kersey's expert report states that
"[s]hould additional information be provided or become available,
                                16

reveals how distant his technique is from the reliable NFPA 921

protocol that the parties agree should be used in any a fire

causation inquiry. Fed. R. Evid. 702(d); see Mitchell, 365 F.3d

at 235 (listing as one of the factors "the relationship of the

technique to methods which have been established to be reliable"

(quoting Paoli, 35 F.3d at 742 n. 8)).

Two of our Court of Appeals's reliability factors[13] are

lacking in Kersey's "application" of the NFPA 921 methodology, and

we cannot conclude that his opinion is supported by good grounds.

See Fed. R. Evid. 702(d); Mitchell, 365 F.3d at 235 (quoting

Paoli, 35 F.3d at 742 n. 8).

First, even if we were to assume that Kersey's expert

report "reliably" ruled out an electrical cause for the fire,[14]

NFPA 921 § 18.6.5 provides that

> [t]he process of determining the ignition
> source for a fire, by eliminating all ignition

---

I reserve the right to modify, revise or supersede my opinions and conclusions, where appropriate." MSJ Ex. B at 6 of 6.

[13] That is, "whether a method consists of a testable hypothesis" and "the relationship of the technique to methods which have been established to be reliable". Mitchell, 365 F.3d at 235 (internal quotation marks omitted). Only these factors appear relevant here.

[14] This is a position State Farm urges us to accept. See, e.g., MSJ Resp. 7 ("defendants . . . ignore[] the first sentence" of Marshall's statement that the fire was caused in the trash can, but omitting any discussion of the electrical cause hypothesis); MSJ Ex. B at 5 of 6 (speaking of causation without any reference to an electrical cause); April 10, 2013 Tr. 89:12-14 ("Q. Your report does not state that you ruled out any electrical cause to this fire; correct? A. No, sir.").

sources found, known, or believed to have been
present in the area of origin, and then
claiming such methodology is proof of an
ignition source for which there is no evidence
of its existence, is referred to by some
investigators as 'negative corpus.' . . . This
process is not consistent with the Scientific
Method, is inappropriate, and should not be
used because it generates un-testable
hypotheses, and may result in incorrect
determinations of the ignition source and
first fuel ignited [(emphasis added);]

In speculatively concluding that Mark Steffen caused an

open flame to ignite the contents of a trash can, see discussion,

supra, Kersey's reasoning impermissibly relies on precisely this

untestable "negative corpus" even though the NFPA 921 protocol

that he purports to have followed specifically identifies his

approach as inconsistent with the scientific method.

Second, the Steffens also scrutinize Kersey's fidelity

to the NFPA 921 method given the manner in which he excluded an

electrical cause for the fire.  See Steffens' Supp. Br. 4 of 45;

April 10, 2013 Tr. 89-90.  Kersey justified his decision to

exclude any electrical cause based solely on Marshall's statement

that "[f]ire either electrical from wall wiring or refrigerator in

closet.  Found that neither is likley [sic]".  MSJ Resp. Ex. B;

April 10, 2013 Tr. 49:4-5 ("So Randy ruled out the wall wiring and

refrigerator, any electrical causes with them").  But Kersey's

report and Daubert hearing testimony do not take into account

Marshall's February 21, 2012 deposition testimony at which he

testified that he told Richard O'Brien, Nationwide's cause and origin specialist, MSJ Resp. Ex. D 9:10-18; MSJ Ex. B at 1 of 6, that the electrical wires were too badly burned for him to be able to make a determination as to whether the fire had an electrical cause.  MSJ Ex. F 14:22-15:3; id. 14:13-21 ("I can't tell whether it was electrical or not" because of melting and "I write things in here that I really shouldn't because the -- I'm not the one who determines whether it was a trash can fire.  I'm only there to look at the electrical").  Kersey's failure to address this readily available and relevant evidence[15] reveals that his consideration of Marshall's statement focuses only on a small, isolated fragment of evidence that exists in a much broader evidentiary context.

        Kersey's limited analysis of the available data runs afoul of NFPA 921 § 4.3.8's stern warning against "[e]xpectation bias . . . that occurs in scientific analysis when investigator(s) reach a premature conclusion without having examined or considered

_____

        [15] NFPA 921 states that an origin and cause investigation is conducted "by an examination of the scene and by a combination of other data collection methods, such as the review of previously conducted investigations of the incident, the interviewing of witnesses or other knowledgeable persons, and the results of scientific testing."  NFPA 921 § 4.3.2.  This section of NFPA 921 does not provide an exclusive list of data sources, and Marshall's deposition testimony is certainly consistent with data classified as an interview of another "knowledgeable person".  Kersey's failure to consider Marshall's testimony overlooks evidence that NFPA 921 includes among the "other data collection methods" that

all of the relevant data. . . . The introduction of expectation
bias into the investigation results in the use of only that data
that supports this previously formed conclusion and often results
in the misinterpretation and/or the discarding of data that does
not support the original opinion." Notably, Marshall's February
21, 2012 deposition had been completed the day before State Farm's
counsel requested Kersey to produce an expert report, MSJ Ex. B at
1 of 6; April 10, 2013 Tr. 12:15-16 ("I was retained by State Farm
Insurance Company to conduct an origin and cause investigation on
their behalf"). Indeed, Kersey wrote his report six days after
Marshall's deposition. MSJ Ex. B at 1 of 6. Even though that
deposition was finished, State Farm's counsel inexplicably did not
provide its retained expert with any transcript of Marshall's
deposition testimony when he requested that Kersey produce an
expert report. At the <u>Daubert</u> hearing, Kersey testified that he
had not asked State Farm's counsel for copies of Marshall's
deposition testimony because he "didn't even know [Marshall] had a
deposition until [State Farm's counsel] told" him. April 10, 2013
Tr. 93:18-19. And although Kersey could not recall when State
Farm's attorney first mentioned the existence of Marshall's
deposition testimony, Kersey testified before us that it

---

it sanctions.

"[p]robably [occurred] at the time when we were speaking about the report." Id. at 93:21-22.

Crediting this testimony and the undeniable timeline here, we cannot excuse State Farm's selective disclosure of evidence to its retained expert.[16] State Farm for reasons best known to it interfered with its expert's ability faithfully to apply the NFPA 921 methodology because its omission deprived Kersey of the opportunity to consider and analyze the entire body of relevant and available data. Even when the defendants confronted Kersey with Marshall's deposition testimony at the Daubert hearing, he did not address how, if at all, Marshall's deposition testimony would change his opinion's exclusion of any electrical cause. Consequently, we cannot conclude that Kersey reliably applied NFPA 921 when he excluded the electrical cause hypothesis from further consideration.[17] See NFPA 921 § 18.7 ("When using the Scientific Method, the failure to consider

---

[16] We also remind State Farm's counsel of his duties under Fed. R. Civ. P. 11(b)(3) and Pa. R. Prof. Conduct 3.3(a)(3).

[17] The record suggests that this hypothesis was adopted in two of the reports Kersey himself relied upon to formulate his opinion. See April 10, 2013 Tr. 89:15-18 ("Q. Mr. O'Brien's report, the state trooper's report, and Mr. Schneiders' report all say that you could not rule out an electrical cause to this fire; is that correct? A. That's what they say. Well, Randy didn't do a report. He only had the field notes that I could look at."); MSJ Ex. B at 1 of 6 (noting the Kersey reviewed the state trooper's and O'Brien's reports but not Schneiders'). Kersey's report and testimony fail to explain why he disregarded this hypothesis out of hand given its presence in these other reports.

alternate hypotheses is a serious error.  A critical question to

be answered by fire investigators is, "Are there any other cause

hypotheses that are consistent with the data?"  The investigator

should document the facts that support the cause determination to

the exclusion of all other reasonable causes"); see also Community

Ass'n Underwriters of Am., Inc., 2013 WL 818596, at *11 (finding

fidelity to NFPA 921 where the proffered expert "considered and

ultimately rejected alternative sources"); Hoang, 652 F. Supp. 2d

at 574.[18]

　　　　Our Court of Appeals's decision in Breidor v. Sears,

Roebuck & Co., 722 F.2d 1134, 1138 (3d Cir. 1983), fortifies our

conclusion here.  Breidor, in a pre-Daubert decision, held that

"[w]here a fire investigator identifies the cause of fire in terms

of probabilities (as opposed to mere possibilities) by eliminating

all but one reasonable potential cause, such testimony is highly

probative."  Id. (emphasis added); see State Farm Fire & Cas. Co.

v. Holmes Prods., 165 F. App'x 182, 186 (3d Cir. 2006) (citing

Breidor for this proposition).  As noted above, Kersey's

methodology demonstrates that he did not reliably eliminate any

other reasonable potential cause of the fire, thus gravely

_____

　　　　[18] Indeed, NFPA 921 endorses (in more than one place)
processes of elimination that a fire cause investigator is to use
in arriving at a fire causation opinion.  Accord Community Ass'n
Underwriters of Am., Inc., 2013 WL 818596, at *11; Hoang, 652 F.
Supp. 2d at 574.

impairing his opinion's probative value.  Since State Farm's record evidence of causation (in the form of Kersey's opinion evidence) "'is merely colorable or is not significantly probative'", Affiliated FM Ins. Co., 311 F.3d at 232-33 (3d Cir. 2002) (quoting Anderson, 477 U.S. at  249-50), it has failed to point to record evidence that would allow its claim to survive summary judgment.

Kersey's failure to base his opinion on facts and data and faithfully apply the NFPA 921 procedure and scientific method means in the end that there is "too great an analytical gap" between his method of interpreting the data and his ultimate conclusion as to the fire's cause.  It therefore cannot be reliable.  See Fed. R. Evid. 702(d); Joiner, 522 U.S. at 146.  We will therefore not consider Kersey's expert fire causation opinion as part of the summary judgment record because it "cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).

Since State Farm cannot point to any admissible causation evidence in the summary judgment record, it has failed to establish a prima facie negligence claim and it must succumb to summary judgment.

B.   The Vicarious Spoliation Theory Fails
     Because State Farm Cannot Point to Any
     <u>Evidence that Nationwide Was the Steffens' Agent</u>

In the face of this dearth of causation evidence, State

Farm seeks refuge from summary judgment when it proffers an

adverse inference on the causation issue based upon its "vicarious

spoliation"[19] theory.

Notably, State Farm does not assert that the Steffens

themselves are the direct spoliators of any evidence.  Instead,

State Farm blames Nationwide for it.  <u>See, e.g.</u>, MSJ Resp. 4

("Nationwide . . . refused State Farm access to the property to

inspect. . . . [D]efendants through Nationwide . . . destroyed

evidence"); <u>id.</u> at 10 ("The defendants will no doubt argue that

Nationwide destroyed the evidence and refused access to State

Farm.  The defendants are still liable.  Nationwide was operating

on behalf of the defendants."); State Farm Supp. Br. 4

("Nationwide, who had the exclusive control of the building and

who was in control of the scene, gutted the property and preserved

no evidence during the time State Farm was making repeated

---

[19] It appears that a spoliation inquiry is not limited solely
to an analysis of a party's actions, but also to its agents and
those acting at the party's behest.  <u>See</u> <u>Vodusek v. Bayliner</u>
<u>Marine Corp.</u>, 71 F.3d 148, 156–57 (4th Cir. 1995); <u>Bowman v. Am.</u>
<u>Med. Sys., Inc.</u>, No. 96–7871, 1998 WL 721079, at *4 (E.D. Pa. Oct.
9, 1998); <u>see also</u> Jamie S. Gorelick, et al., <u>Destruction of</u>
<u>Evidence</u> § 2.10 (current through 2012 cumulative supplement).

requests for access to conduct an inspection"); MSJ Resp. 10 (same).

State Farm seeks to attribute Nationwide's allegedly spoliating actions to the Steffens only on the basis of what Nationwide did or did not do.  <u>See</u> MSJ Resp. 4 ("defendants through Nationwide Insurance Company refused State Farm access to the property to inspect . . . . [D]efendants through Nationwide Insurance Company destroyed evidence"); <u>id.</u> at 10 ("Nationwide was clearly acting as an agent for the defendant [<u>sic</u>]"); <u>id.</u> ("Nationwide was operating on behalf of the defendants"); State Farm Supp. Br. 4 ("Nationwide was clearly acting as an agent for the defendant").[20]

In light of this theory, the Steffens respond that summary judgment is warranted (State Farm's vicarious spoliation theory notwithstanding) because "Nationwide cannot be said to have been acting for the Steffens . . . in its investigation of the fire", and there is no record evidence of Nationwide's status as the Steffens' agent.  <u>See</u> Reply at 3-4.

---

[20] State Farm's response to the motion for summary judgment and supplemental brief asserts a vicarious spoliation theory against Nationwide and not a direct spoliation theory against the Steffens.  The tenor of its summary judgment motion is only directed at Nationwide's conduct.  MSJ Resp. 7-16; State Farm Supp. Br. 2 ("Defendant's [<u>sic</u>] insurance carrier is attempting to benefit from its own malfeasance.").  Consequently, we need not reach the merits of a direct spoliation theory against the Steffens.

State Farm bears the burden of establishing that it is entitled to a summary judgment-defeating inference on the fire causation issue.  See United States v. Laurent, 607 F.3d 895, 902 (1st Cir. 2010) (holding that the party asserting spoliation bears the burden to establish such evidence in order to receive a spoliation instruction); Bull v. United Parcel Serv., Inc., 665 F.3d 68, 77 (3d Cir. 2012) (placing burden on proponent of spoliation evidence).[21]  To survive the Steffens' motion for summary judgment, State Farm must point to "sufficient probative evidence for a jury to find an act of spoliation [by the Steffens' agent] and to draw the inference derived from such an act", see Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1322 (11th Cir. 2011) (Korman, J., dissenting) (citing Bashir v.

_____

[21] In response to our March 14, 2013 Order, the parties do not disagree that: (1) our Court of Appeals's spoliation holding in Bull, 665 F.3d at 73, applies in this diversity case, see State Farm Supp. Br. 1; Steffens Supp. Br. at 12 of 45, and (2) we should apply the traditional master-servant relationship as it is understood by common law agency principles, see State Farm Supp. Br. 4; Steffens Supp. Br. at 7-11 of 45.
    Bull holds that "[s]poliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party."  665 F.3d at 73.  We need not reach whether Nationwide's conduct satisfies each of these four Bull factors because we ultimately conclude that the Steffens are not liable for Nationwide's alleged actions under State Farm's vicarious spoliation theory.
    We also expressed our inclination to apply The Restatement (Third) Agency here, and both parties' appear to agree since their supplemental briefings parrot the Third Restatement
26

Amtrak, 119 F.3d 929, 931 (11th Cir. 1997) (per curiam), and

Kronisch v. United States, 150 F.3d 112, 127-28 (2d Cir. 1998));

see also Nation-Wide Check Corp., Inc. v. Forest Hills

Distributors, Inc., 692 F.2d 214, 218-19 (1st Cir. 1982) (Breyer,

then-Circuit Judge).

Given the nature of State Farm's vicarious spoliation

theory and the Steffens' summary judgment argument here, in order

to survive summary judgment State Farm must point to record

evidence that could lead a reasonable factfinder to conclude that

Nationwide was the Steffens' agent at the time it allegedly

spoliated the fire scene.  See Lippay v. Christos, 996 F.2d 1490,

1497 (3d Cir. 1993) (placing burden of establishing agency on

proponent of evidence).

In our March 14, 2013 Order, we directed the parties to

file supplemental briefs that more fully addressed the legal and

factual grounds that could support a finding that Nationwide was

the Steffens' agent at a time when Nationwide was in complete

control of the Steffens' home during its investigation of their

first-party insurance claim.

In an effort to clarify its theory that Nationwide was

the Steffens' agent, State Farm states that "on the issue of

agency, Nationwide was operating under the contractual obligation

_____

provisions to us.

they had to the insured.  A fiduciary relationship was created."
State Farm Supp. Br. 7; see also id. 5 ("Nationwide was fulfilling
its contractual obligation to the defendants").

At the Daubert hearing, the parties stipulated to the
admission of Ex. P-7 (the Steffens' insurance policy with
Nationwide).  State Farm also entered into evidence a signed
"Permission Granted Form" the contents of which gave Nationwide
"AUTHORITY TO ENTER UPON [the Steffens'] PROPERTY AND INVESTIGATE
[their] LOSS AND REMOVE ANY EVIDENCE THAT MAY POINT TO THE CAUSE
OR ORIGIN OF THE LOSS AT PRESENT OR AT A LATER DATE."  Hrg. Ex. P-
8.

Whether State Farm survives summary judgment on the
basis of its vicarious spoliation theory turns on whether it has
pointed to any evidence that creates a genuine issue of fact as to
whether the Steffens manifested their assent to Nationwide to act
on their behalf and subject to their control.  See Restatement
(Third) Agency § 1.01 ("[a]gency is the fiduciary relationship
that arises when one person (a 'principal') manifests assent to
another person (an 'agent') that the agent shall act on the
principal's behalf and subject to the principal's control, and the
agent manifests assent or otherwise consents so to act." ).  We
conclude that State Farm has not pointed to any such evidence in
this record.

"A person manifests assent or intention through written or spoken words or other conduct."  Id. at § 1.03; see also id. Comment a ("A manifestation of the principal's assent to the agent is an element of the definition of a relationship of agency"). Nationwide and the Steffens certainly assented to be bound by certain contractual duties when they entered into an insurance contract and the Steffens signed the "Permission Granted Form." But State Farm does not point to any provision in the insurance policy -- or for that matter to any other signed agreement -- that evidences the Steffens' consenting to Nationwide taking actions subject to their control.

It is indisputable that the Steffens executed the "Permission Granted Form" in the context of Nationwide's first-party claim investigation of the fire.  See, e.g., State Farm Supp. Br. 7 ("When Nationwide investigated"); MSJ Resp. 7 ("Nationwide Insurance Company as the insurer of the Steffens conducted a cause and origin investigation"); id. at 8 ("As a result of Nationwide's cause and origin investigation"); State Farm Supp. Br. 4 ("The Nationwide adjuster told [Marc Steffen that] the property had to be inspected before it was gutted.  Mr. Steffen did not even have a key to the property.  The Nationwide adjuster had the key."); MSJ 3 ("Nationwide investigated the fire

before it eventually agreed to pay the Steffens for any losses under their homeowners insurance policy.").

At the hearing, we also heard uncontroverted testimony that Nationwide could use the fruits of its investigation "to prove that [the fire] was not a covered loss" under the circumstances, Tr. 118:1-4. Such proof would of course relieve Nationwide of its duties to its insureds under the policy.

Under their Nationwide policy, the Steffens were obliged to "cooperate" with Nationwide in "giving evidence" to it, Hrg. Ex. P-7 at J1, so that Nationwide could exercise its right under the policy to "<u>investigate</u> and settle any claim or suit", Hrg. Ex. P-7 at G1 (emphasis added). If the Steffens failed to provide Nationwide with such cooperation that they owed under the policy, Nationwide might have been able to assert a "lack of cooperation" defense against the Steffens to avoid coverage it would otherwise owe them.[22] See <u>Forest City Grant Liberty Assocs. v. Genro II, Inc.</u>, 652 A.2d 948, 951 (Pa. Super. Ct. 1995) ("[a]lthough a breach of a duty to cooperate will relieve the insurer from

_____

[22] In order to show that the insured breached the duty to cooperate, the insurer must show that the breach is something more than a mere technical departure from the letter of the Policy. Instead, the insurer must show that the breach is a material variance that results in substantial prejudice and injury to the insurer's position in the matter.
　　See <u>Conroy v. Commercial Casualty Ins. Co.</u>, 140 A. 905, 907 (1928); <u>Paxton Nat'l Ins. Co. v. Brickajlik</u>, 522 A.2d 531, 532 (1987) (same).

liability under the policy, a failure to cooperate must be substantial and will only serve as a defense where the insurer has suffered prejudice because of the breach").

State Farm's agency argument overlooks the well-established principle that first-party insurance claims are adversarial proceedings between an insurer and its insured notwithstanding an insurer and insured's congruent interests in third-party insurance claims. See, e.g., Port Authority of N.Y. & N.J. v. Affiliated FM Ins Co., 311 F.3d 226, 233 (3d Cir. 2002) (applying New York and New Jersey law) (reasoning that in the "first-party [insurance claim] context, the insured and carrier are placed in an adversarial position" because "[f]irst-party coverage . . . protects against loss caused by injury to the insured's own property" and not loss "against liability for claims made against [insureds by third parties] as a result of [the insureds'] own conduct"); accord Gottstein v. Nat'l Ass'n for Self Employed, 53 F. Supp. 2d 1212, 1221 n.2 (D. Kan. 1999) (holding that an "adversary relationship" existed between insurer and insured with respect to first-party claims); Bailey v. Allstate Ins. Co., 844 P.2d 1336, 1339 (Colo. Ct. App. 1992) ("[f]irst-party actions are adversarial in nature; therefore, it is impossible for the insurer to act as a fiduciary for its opposing contractee"); see generally Allan D. Windt, 1 Insurance Claims &

Disputes: Representation of Insurance Companies & Insureds §§ 9:26 n.84 & accompanying text (current through March 2012) ("The insurer is free to be adversarial within the confines of the normal rules of procedure and ethics"); id. 9:28A & text accompanying nn.4-5 ("no fiduciary duty exists with regard to first party claims: it is, in fact, an adversarial relationship").

Judges every day preside over insurer-initiated declaratory judgment actions in first-party claim cases where the insurer seeks to excuse itself from any duty to defend and indemnify the insured under the terms of the insurance contract. In our District and in the state courts insured-initiated actions against insurers alleging statutory bad faith claims are also daily civil filings. See 42 Pa. Cons. Stat. § 8371. The existence of such first-party claim litigation and the Pennsylvania statutory bad faith scheme shows beyond doubt that the interests of insurers and their insureds are anything but allied in the first-party claim context.

Thus, State Farm's effort to point to the insurance policy or "Permission Granted Form" as evidence that the Steffens assented to Nationwide acting on its behalf and subject to its control fundamentally misapprehends the nature of everyday first-party insurance claims. Nationwide acted on its own behalf to determine whether a covered loss existed for which it would owe

the Steffens a duty to defend and/or indemnify.  The Steffens had
no control over Nationwide's actions after the fire because they
were bound by a contractual duty to cooperate with Nationwide's
investigatory requests or potentially lose coverage under the
policy.  By giving Nationwide permission to conduct its first-
party claim investigation, the Steffens ceded control of the
property to their insurer.  Since there is insufficient probative
evidence for a factfinder to find an act of spoliation by any
agent of the Steffens here -- see Josendis, 662 F.3d at 1322
(Korman, J., dissenting); Nation-Wide Check Corp., Inc., 692 F.2d
at 218-19; Lippay, 996 F.2d at 1497 -- State Farm's vicarious
spoliation theory fails to defeat summary judgment.

        State Farm's supplemental briefing points to Baliotis v.
McNeil, 870 F. Supp. 1285 (M.D. Pa. 1994) (Vanaskie, then-Dist.
Ct. J.), in support of its claim that an adverse spoliation
inference is warranted against an insured for the actions of its
insurer.  Curiously, State Farm then makes no effort to explain
why Baliotis's reasoning should apply to the facts here.  Baliotis
simply does not apply to a vicarious spoliation theory.

        Specifically, Baliotis was a case where the insured was
a plaintiff in a claim against certain defendants for a fire that
was allegedly caused by a faulty product.  870 F. Supp. at 1288.
These defendants filed a joint motion for summary judgment based

upon the insurer and the insured's allegedly improper demolition of a fire scene.  Id. at 1288-89.  Implicit in Judge Vanaskie's decision to attribute the insurer's actions to the insured -- and therefore impose spoliation sanctions against the insurer and its insured -- was an acknowledgment that the insurer-subrogee was a real party in interest to the litigation, even though not named,[23] because "the subrogation claim filed by the [insureds] [wa]s really being prosecuted by the" insurer who was "seeking recovery of the [$84,100] it paid under the home owners policy."  Id. at 1290 n.10.  Fed. R. Civ. P. 17(a) then provided that "[a]n action must be prosecuted in the name of the real party in interest." See also United States v. Aetna Cas. & Sur. Co., 338 U.S. 366, 380-81 (1949).  Notwithstanding the insurer's absence as a named plaintiff, Judge Vanaskie and the defendants treated it as a real party-in-interest plaintiff precisely as the Federal Rules of Civil Procedure then required.[24]  Consequently, Baliotis addresses a direct spoliation theory against a real party in interest

_____

[23]  See docket sheet in Baliotis v. McNeil, C.A. No. 92-1140 (M.D. Pa. filed August 20, 1992) (not naming the insurer as a party in the matter).

[24]  Indeed, Judge Vanaskie concluded that "it [was] appropriate to consider only the actions of [the insurer], and not those of the [insureds]" and the defendants' joint motion for summary judgment was "directed against . . . the [insureds] and their . . . [insurer]", Baliotis, 870 F. Supp. at 1289-90 & n.10 (emphasis added).  Moreover, it appears that the insurer in Baliotis represented its own interests in the proceedings.  Id. at 1290-91 ("Liberty Mutual contends", "Liberty Mutual's assertion", "Liberty

34

plaintiff in whose name a lawsuit must be prosecuted under the

Rules.  Judge Vanaskie thus had no need to engage in the agency

inquiry critical to our vicarious spoliation analysis here and

Baliotis is silent on the issue we confront here even if its

outcome is congenial with State Farm's purposes.[25]

---

Mutual maintains that it did preserve the relevant evidence").
     [25] On page eight of State Farm's supplemental brief, it cites
Vodusek, 71 F.3d at 156-67, Bowman, 1998 WL 721079, at *4, and
Community Associates Underwriters of Am., Inc., 2013 WL 818596, at
*10, in support of its attribution theory.  These cases are also
inapposite.
     In Vodusek, the plaintiff's retained expert spoliated
evidence.  In contrast to this case, the grounds for an agency
finding were thus straightforward given the typical master-servant
relationship present there.
     Bowman's facts demonstrate why it differs from what is
involved here.  The Bowman plaintiff had legal counsel and,
together, plaintiff and counsel instructed plaintiff's doctor to
preserve certain evidence which the doctor did not do.  See also
Bull, 665 F.3d at 73 ("duty to preserve the evidence was
reasonably foreseeable.") By contrast, there is no evidence here
that the Steffens even had counsel when the fire scene was
allegedly spoliated.  Moreover, it appears undisputed that the
concededly unsophisticated Steffens, State Farm Supp. Br. 6-7
("Mr. and Mrs. Steffens [sic] knew little, if anything, about fire
investigations and liability claims"), were never told by State
Farm or anyone else that they must preserve the fire scene or that
any party was interested in inspecting the premises.
Consequently, the Steffens did not entrust known essential
evidence to another entity such that the other entity's spoliation
could be attributed to them under Bowman's reasoning.  See, e.g.,
MSJ Resp. Ex. F 45:6-46:1 (Mark Steffen deposition) ("Q.  Did
anyone from Nationwide tell you that the insurance companies for
some of the adjacent homeowners wanted to get inspectors in to
look at the house?  A.  No, they did not.  . . . [Q.] So you never
heard that anyone else wanted to get in and inspect the house, is
that correct?  A.  That's correct.  Q.  If you had heard that
somebody wanted to inspect the house, would you have granted them
access?  A.  Well, at that time I didn't have the key.").
     In Community Associates Underwriters of America, Inc., the

Nationwide is not a party to this litigation.  It is also not a plaintiff in whose name the Federal Rules of Civil Procedure requires a case to be prosecuted.  To the contrary, when Nationwide was the interpleader plaintiff in the related action State Farm filed <u>no</u> counterclaim against it.  State Farm, as the party contending that a spoliation sanction should be imposed here, has never treated Nationwide as a party defendant or as a real party in interest in this controversy.  This contrasts with the way the spoliation proponents in <u>Baliotis</u> regarded the insurer.

Under these circumstances, we will not <u>sua sponte</u> ascribe Nationwide the status of a "person"[26] who should have been joined as a defendant over State Farm's deliberate choice not to so name it.  This is significant where State Farm's pleading has never identified or explained under Fed. R. Civ. P. 19(c) why Nationwide is such a "person" it had not joined.  <u>See Simpson v.</u>

_____

retained origin and cause expert hired a contractor who spoliated evidence.  2013 WL 818596, at *2.  Thus, that vicarious spoliation claim was premised on a series of master-servant relationships absent here.

[26] Fed. R. Civ. P. 19 governs the required joinder of parties. Though the rule speaks in terms of "persons" to be joined, "'the term 'person' as used in the Federal Rules of Civil Procedure consistently means natural persons and business associations as well as governments'".  <u>Rosenruist-Gestao E Servicos LDA v. Virgin Enterprises Ltd.</u>, 511 F.3d 437, 445 (4th Cir. 2007) (alterations and brackets in original omitted) (quoting <u>Yousuf v. Samantar</u>, 451 F.3d 248, 257 (D.C. Cir. 2006)).  Consequently, "persons" as used in Fed. R. Civ. P. 19(c) covers business associations like

<u>Alaska State Commission for Human Rights</u>, 608 F.2d 1171, 1174 (9th Cir. 1979) ("A plaintiff ordinarily is free to decide who shall be parties to his lawsuit.").[27]

IV.   <u>Conclusion</u>

We will therefore grant the Steffens' motion for summary judgment and enter judgment for them and against State Farm.


BY THE COURT:

<u>/S/ STEWART DALZELL, J.</u>

---

Nationwide.
[27] It is also difficult for us to envision how our disposition of this summary judgment motion impedes, as a practical matter, Nationwide's ability to protect its interest here such that it must be considered a party required to be joined.  <u>See</u> Fed. R. Civ. P. 19(a)(1)(B).  We dispose of State Farm's claim against the Steffens in its entirety such that they (and their indemnifying insurer) incur <u>no</u> negligence-based loss liability.